**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

UNITED STATES OF AMERICA,

       Plaintiff,

    vs.                                           No.  CR 10-2387 WJ

EDWIN TORO SANCHEZ, SR.,

       Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

THIS MATTER comes before the Court on Defendant's Motion to Suppress (**doc. 70**), filed September 2, 2011.  Defendant asks that all evidence obtained as a result of the June 7, 2010, warrant be suppressed for violation of the Fourth Amendment.  The Court has considered the parties' submissions; additionally the Court received evidence and heard argument on this motion at a hearing on October 17, 2011.  The Court announced on the record that it was denying Defendant's motion and the case proceeded to trial that same day, whereupon the Jury found the Defendant guilty of Possession With Intent to Distribute 100 Kilograms and More of Marijuana and Aiding and Abetting, as charged in the Indictment.  This opinion memorializes the Court's findings on Defendant's Motion to Suppress.

Defendant argues that the affidavit provided to U.S. Magistrate Judge Karen B. Molsen in support of the June 7 warrant application was insufficient to provide probable cause to search his residence, that factual errors in the affidavit undermine any probable cause determination, and that the facial insufficiency and the errors in the affidavit prevented the agents involved from

1

reasonably relying on the validity of the warrant in conducting their search.

**Background**

Drug Enforcement Agency ("DEA") agents, along with local law enforcement, were investigating Adriana Amaya for her connection in a large drug-smuggling and distribution organization. The agents had obtained evidence that Amaya was involved in the organization handling the financial side of drug transactions: they had conducted a wire intercept investigation and had intercepted drug-related calls between Amaya and other members of the organization. Therefore, as a part of the larger investigation, agents intended to search Amaya's residence for evidence of her crimes.

On June 4, 2010, DEA Special Agent Amy Billhymer submitted a warrant application to search four residences including 4113 Barbara Vista, Amaya's supposed residence. The original warrant application was approved by U.S. Magistrate Judge Gregory B. Wormuth as to the other three residences, but rejected as to 4113 Barbara Vista. Judge Wormuth did not find that there was sufficient probable cause to search for drugs at Amaya's residence, as she appeared to handle the financial aspects of drug transactions rather than the actual drugs. Special Agent Billhymer then prepared and submitted a second warrant application which was reviewed by Judge Molzen on June 7, 2010.[1] The new application removed drugs from the items to be searched for, leaving essentially various documentary evidence on the application. Special Agent Billhymer also edited the affidavit to apply only to 4113 Barbara Vista, and made other slight changes. Judge Molzen authorized the warrant, and DEA and FBI agents conducted the search. Upon executing the search warrant, the agents discovered that 4113 Barbara Vista was

---

[1]Judge Wormuth was out of town on June 7, 2010.

the home of Defendant, Edwin Toro Sanchez Sr., the biological father of Adriana Amaya, and they learned that Amaya no longer resided at 4113 Barbara Vista.  The agents also found large quantities of marijuana at the residence.  Upon encountering the marijuana, the agents immediately obtained a warrant authorizing them to search for more drugs, which resulted in the agents seizing 579 pounds of marijuana.

Defendant now challenges the June 7 warrant, arguing that there was insufficient information in the affidavit linking 4113 Barbara Vista to Amaya to support probable cause to search that residence.  He seeks to have all of the evidence obtained as a result of the warrant suppressed.

**Discussion**

I. *Probable Cause Determination by Judge Molsen*

"A magistrate judge's decision to issue a warrant is entitled to great deference. Accordingly, we need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a 'substantial basis' for determining that probable cause existed."  *U.S. v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (internal citations and quotations omitted).  "Probable cause exists where attending circumstances would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *U.S. v. Perrine*, 518 F.3d 1196, 1205 (10th Cir. 2008) (internal citations and quotations omitted).  Here, Judge Molsen had a substantial basis, apart from any factual errors identified in the affidavit, to conclude that there was a fair probability that evidence of Amaya's crimes would be found at 4113 Barbara Vista.

The affidavit contained evidence that Amaya was involved in a drug-smuggling and distribution organization.  Defendant does not contest that there was sufficient evidence to

3

support a probable cause determination that Amaya was guilty of crimes involving drugs.  As far

as probable cause to search Amaya's residence, the Tenth Circuit has stated that "it [is] merely

common sense that a drug supplier will keep evidence of his crimes at his home. . . . [W]hen

police officers have probable cause to believe that a suspect is involved in drug distribution,

there is also probable cause to believe that additional evidence of drug-trafficking crimes (such

as drug paraphernalia or sales records) will be found in his residence."  *U.S. v. Sanchez*, 555 F.3d

910, 914 (10th Cir. 2009).  In this case, therefore, there was probable cause to search Amaya's

residence for evidence of her drug-related crimes.  Thus, the question that must be answered is

whether there was a sufficient factual basis in the affidavit to conclude that 4113 Barbara Vista

was Amaya's residence.

The factual support in Special Agent Billhymer's affidavit is as follows:

> During the course of this wire intercept investigation agents intercepted Adriana Amaya talking to other members of this organization using cellular telephone (505) 907-1214.  Cricket records show that the cellular phone is subscribed to by Adriana Amaya with a listed address of 4113 Barbara Vista SW, Albuquerque, NM (Subject Premises #1). . . .
> Based on information received throughout this investigation from state and local databases and Cricket records, agents have determined that 4113 Barbara Vista SW located in Albuquerque, NM (Subject Premises #1) is the current address of Adriana Amaya.  Agents conducted surveillance in mid-May 2010 and noticed several video cameras strategically affixed to the residence.  One camera was located above the front door.  The second camera was located on the southwest corner overlooking the driveway.  The residence is surrounded on the west side by an 8 foot cinderblock fence that wraps around the north side of the residence concealing it from public view.  On the south (front) side of the residence, the house has a rod [sic] iron fence which has a metal gate that is secured by a padlock.  During several roving surveillances, agents have observed individuals standing outside the residence in [sic] what appeared to be "lookouts."  Based on my training and experience, drug traffickers and/or members of the organization, oftentimes build a fortress around their residence to protect either narcotics and/or bulk currency and have individuals located at the residence to "guard" it.  Based on information received from this wire intercept investigation, agents believe Amaya is a bulk currency courier and possibly maintains a stash house for her brother Edwin Sanchez [Jr.] at Subject Premises #1.

Gov't Ex. 2 at 12–13.  Defendant argues that under *United States v. Roach*, 582 F.3d 1192 (10th

Cir. 2009), this is an insufficient basis for Judge Molzen's probable cause determination.  The Court disagrees.

In *Roach*, the court addressed an affidavit seeking to search fifteen residences, but containing only (1) a generic statement that officers had verified all the residences, and (2) a listing of different methods that had been used in that general investigation.  *Id.* at 1202.  There was no differentiation between residences, and the court reasoned that the reviewing magistrate could not know which method had been used as to which residence.  *Id.* at 1202–03.  Thus, the magistrate could not determine independently whether the basis was adequate for any particular address.  *Id.*

By contrast, in the June 7 warrant in this case, there was only one address; rather than a generic statement, the affidavit clearly states the particular methods used to verify that 4113 Barbara Vista was Amaya's residence.  The Court believes that such particularity was adequate, by the *Roach* court's standards, to enable Judge Molzen to make an independent determination that adequate grounds existed to provide probable cause to search 4113 Barbara Vista.

The primary evidence linking 4113 Barbara Vista to Amaya is the fact that the cellular-phone carrier Cricket had records for Amaya's cell phone placing her there.  In other words, after wire-tap investigators had heard Amaya using this cellular number to conduct drug business, had found that the number was registered to Amaya, and that she, in registering her cellular account, put 4113 Barbara Vista as her residence.  Therefore, the evidence provided by the Cricket phone records is substantially different from the conclusory statements in *Roach*, and is enough even alone to lead a prudent person to believe that there was a fair probability Amaya lived at 4113 Barbara Vista.

Beyond the Cricket phone records, Special Agent Billhymer wrote that "state and local

databases" had also confirmed Amaya's address.  While the databases in question, LexisNexis and Bernalillo County tax records, were not specified by name in the affidavit, the fact that additional databases, of whatever sort, had confirmed the address still provides additional weight to the probability that Amaya lived at 4113 Barbara Vista.

During cross examination, Special Agent Billhymer admitted that some of the factual information in the above quoted paragraphs was incorrect or slightly misleading.  Specifically, the wall did not appear to be eight feet tall, but instead was more likely five or six feet tall.  The wrought-iron fence was substantially similar to many other residences in the area, and there was only one video camera on the residence, not two.

As to the video camera, the exchange between defense counsel and Special Agent Billhymer was as follows:

> Q.     . . . I'm going to show you what is marked as 8b.  Does that appear to be the same residence?
> A.     Yes.
> Q.     In any of these photographs, do you see a security camera anywhere near the front door?
> A.     Right here just to the left of the door, looks like it could be a camera.
> Q.     Can I approach and see what you're – oh, here.  According to the photographs that the DEA took – I'll show you Exhibit 8A – what you're pointing to is actually this floodlight.
> A.     Okay.

Draft Hearing Tr. at 32, Oct. 17, 2011.  If Special Agent Billhymer could mistake the floodlight for a camera in defense exhibits, the fact that a roving surveillance team made the same mistake is hardly remarkable.  Investigating agents are not required to be infallible.  The same principle applies to the height of the wall: the agents need not have measured the wall, and even if their estimate was inaccurate, the warrant is not thereby invalidated.

Special Agent Billhymer also admitted that she did not personally conduct the

surveillance or the database searches.  This is immaterial; law enforcement officers are entitled

to rely on the reports of fellow officers.  *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000).

Defense counsel attempted on cross examination to call into question the rigor of the database

search, and suggested that direct searches of county tax records would have shown that Amaya

did not own 4113 Barbara Vista.  However, no evidence was presented suggesting that the

agents fabricated the database searches nor was there any evidence that would suggest a lack of

good faith by the agents.  While Defendant may be correct in his assertion that a more thorough

investigation would have uncovered Amaya's true address, the agents' mistaken belief does not,

in the Court's view, undermine the validity of the warrant.  Individuals who chose to engage in

illegal drug trafficking activity typically are not openly transparent when it comes to identifying

information such as cell-phone subscriber information and residential addresses.

　　　　Finally, Defendant points out a passage in the affidavit where Special Agent Billhymer

attests as follows:

> Throughout the course of this investigation, agents have conducted physical
> surveillance, video surveillance and have spoken to some participants in order to
> confirm the owner or resident of each residence and to confirm information
> received through intercepted calls between the months of January 2010, and May
> 2010.  The information contained below summarizes the events of this
> investigation related to subject premises of this search warrant application.

Gov't Ex. 2 at 10–11.  On cross examination, Special Agent Billhymer admitted that this passage

should have been deleted in editing the June 4 warrant to create the June 7 warrant.  While this

general statement was true as to the other residences contained in the June 4 warrant, it was not

strictly true as to 4113 Barbara Vista because no video surveillance or conversations with

participants had occurred with regard to 4113 Barbara Vista.  The Court notes that this passage is

set off from the section of the affidavit describing the evidence relating to 4113 Barbara Vista

and the erroneous passage refers the reader to the section of specific facts relating to each specified premises.  Once the reader moves to the section relating to 4113 Barbara Vista, the affidavit clearly explains the evidence suggesting that Amaya lives there, and makes no mention of video surveillance or conversations with participants as to that particular address.  Therefore the inadvertent inclusion of this particular paragraph was not substantially misleading or detrimental to Judge Molzen's probable cause determination.

The Court recognizes the importance of care in writing affidavits and the danger of allowing officers to obtain and utilize warrants based on inaccurate information.  However, the Court also notes that Amaya was one of many suspects in a large drug trafficking organization and officers do not always have the time to wait until they have perfectly accurate information before they apply for warrants.  Officers should not be punished for small inadvertent errors which were neither intended to bolster the determination of probable cause nor in fact necessary to that determination.

The Court therefore finds that the errors in the June 7 affidavit did not undermine Judge Molzen's determination of probable cause.  The affidavit contained a substantial basis to support Judge Molzen's probable cause determination, and any mistakes or inadvertent exaggerations elsewhere in the affidavit did not invalidate that determination.

II.  *Good Faith Reliance by Officers*

Even if the affidavit did not provide a substantial basis for Judge Molzen's determination of probable cause, the officers relied in good faith on the warrant, and thus the results of their search would not be suppressed.

There are four situations in which law enforcement officer are not entitled the good-faith exception to the exclusionary rule:

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth.  Second, the exception does not apply when the issuing magistrate wholly abandons her judicial role.  Third, the good-faith exception does not apply when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*U.S. v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (internal citations and quotations omitted).

Defendant does not argue that Judge Molzen wholly abandoned her judicial role.  The record contains no evidence that the affiant, Special Agent Billhymer, recklessly disregarded the truth about the various factual inaccuracies in the affidavit.  She reasonably relied on the information given to her by fellow officers, and the mistakes by those officers do not rise to the level of reckless disregard of the truth.  Neither is the inadvertently included language referring to video surveillance evidence a reckless disregard of the truth or purposeful misleading.  An overlooked stray passage in a hastily re-written document is an unfortunate but understandable mistake.

The DEA agents had an interest in finding Amaya's residence.  There is no evidence that they suspected or were investigating Defendant.  In fact, the uncontroverted evidence was that they had no knowledge whatsoever of Defendant's existence or involvement in drug activities.  Absent a bit of startling investigatory fortune, their time would have been wasted searching 4113 Barbara Vista.

Finally, the warrant is not so lacking in indicia of probable cause, nor so facially deficient, that the executing officers could not have a good faith belief in its validity.  Absent any other evidence, the fact that Amaya's current cell phone registration placed her address at 4113

9

Barbara Vista, and that state and local databases confirmed that location, were clearly enough to support good faith reliance by the officers on the validity of the warrant.

Special Agent Billhymer testified that she prepared her warrant application and affidavit with the supervision and approval of Assistant United States Attorney Michael Nammar.  She also testified that he accompanied her to submit the applications to both Judge Wormuth and Judge Molzen, and at the latter meeting he explained to Judge Molzen why Judge Wormuth had rejected the previous application, and explained the changes that had been made for the June 7 warrant application.  Later during the search of 4113 Barbara Vista, once the agents found evidence of drugs, they stopped the search and obtained a further warrant to search for additional drugs.

In sum, agent Billhymer and the executing agents were not rogue law enforcement personnel bent upon flaunting the Fourth Amendment.  Despite Defendant's objections to mistakes made during the investigation, the law does not require officers to be infallible in their factual investigations; it requires them to obey the requirements of the Fourth Amendment, which in the totality of the circumstances the agents involved in this case did.  Therefore, the Court will not suppress the evidence obtained as a result of the warrant to search 4113 Barbara Vista.

**Conclusion**

The affidavit for the June 7, 2010, warrant application contained facts which provided a substantial basis for Judge Molzen's determination of probable cause to search 4113 Barbara Vista.  Additionally, the executing officers were entitled to rely in good faith on the validity of the warrant, and they did do so.  Defendant has pointed to no legal precedent that support his claims that the warrant or the actions of the officers violated his Fourth Amendment rights.

10

Therefore the Court **DENIES** his Motion to Suppress.

   **SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE